**In the Matter of W.T.L.;**
**L.S., Appellant.**

No. 00–FS–1403.

District of Columbia Court of Appeals.

Submitted Nov. 13, 2002.
Decided Dec. 31, 2002.*

David H. Stringer was on the brief for appellant L.S.

David Sitomer, Guardian ad Litem, filed a statement in lieu of brief.

Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, and Sheila Kaplan, Assistant Corporation Counsel, were on the brief for the District of Columbia.

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on December 31, 2002. It is now being published by direction of the court.

Before WAGNER, Chief Judge, NEWMAN and NEBEKER, Senior Judges.

NEBEKER, Senior Judge:

Appellant, through counsel, appeals from the trial court's finding of fact that appellant's son, W.T.L., was neglected as defined by D.C.Code § 16–2301(9) (1981). This case came on for trial upon a petition alleging neglect under paragraphs (B), (C), and (D) of § 16–2301,[1] which ultimately resulted in the trial court's committing W.T.L. into the charge of the Child and Family Services Agency ("CFSA") of the Department of Human Services. Appellant appeals, contending that there was insufficient evidence to support the neglect finding. We reject that contention and affirm the trial court.

On review of a bench decision, we will not disturb a trial court's judgment or order, "except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (2001). Here, there is no error of law, nor is the judgment plainly wrong or without evidence to support it.

■ Turning first to D.C.Code § 16–2301(9)(B), as the government accurately points out, appellant was homeless. *See generally In re T.R.J.*, 661 A.2d 1086 (D.C. 1995); *In re R.L.*, 590 A.2d 123 (D.C.1991). Additionally, appellant rarely visited the child, either simply to spend time with him or to ensure that he was receiving the proper care. Moreover, the testimony of the caretaker was sufficient to establish that appellant failed to provide for the child,[2] and appellant's receipt of food stamps and TANF and Medicaid benefits was sufficient to establish that appellant's failure to provide for the child was not due to lack of financial means, thus satisfying the definition contained in D.C.Code § 16–2301(9)(B).

■ Looking next to D.C.Code § 16–2301(9)(C), appellant herself testified to her persistent use of alcohol and heroin, which had just recently resulted in one

---

1. Those paragraphs define as "neglected" any child:

    (B) who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or other custodian; or

    (C) whose parent, guardian, or other custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity; or

    (D) whose parent, guardian, or custodian refuses or is unable to assume the responsibility for the child's care, control or subsistence and the person or institution which is providing for the child states an intention to discontinue such care ....

    D.C.Code §§ 16–2301(9)(B), (C), and (D) (1981); recodified at D.C.Code §§ 16–2301(9)(A)(ii), (iii), and (iv) (2001).

2. Appellant contended at trial that she had provided $198.00 of her $298.00 per month Temporary Assistance for Needy Families ("TANF") benefits. The caretaker, however, denied that any such payments were made. To whose testimony to give greater weight is an issue of credibility. As we have said before,

    [W]e must consider the evidence in the light most favorable to the government, giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences .... The government is entitled to the benefit of all reasonable inferences from the evidence, nor may any distinction be drawn between direct and circumstantial evidence. *In re S.G.*, 581 A.2d 771, 774 (D.C.1990) (quoting *In re T.M.*, 577 A.2d 1149, 1151 (D.C.1990)) (internal citations omitted in original). In view of this standard, we must defer to the trial court's decision to credit the testimony of the caretaker over that of appellant.

arrest in the District and one in Virginia. W.I.L., the father, also testified to his long-time heroin addiction. This addiction caused appellant (and W.I.L.) to be repeatedly incarcerated and out of contact with the caretaker and the child.[3] Such a chemical dependency is sufficient to establish appellant's inability to discharge her parental responsibilities, thus satisfying the requirements of D.C.Code § 16–2301(9)(C).[4]

■ Lastly, we turn to the trial court's finding under D.C.Code § 16–2301(9)(D). Appellant argues that the caretaker's reluctance to tender W.T.L. into the custody of CFSA, and her failure to notify appellant of the intent to surrender the child, are of legal import and preclude a finding that W.T.L. was neglected under this provision. However, Section (D) merely requires that the parent be unable to care for the child, which was determined in the instant case, and that the caretaker declare the intent to so discontinue. Here, the caretaker stated that, although she wished to continue caring for W.T.L., she was unable to because of the demands of rearing her own children. That this process was initiated at the behest of CFSA is of no legal significance: appellant was unable to care for W.T.L., and the caretaker stated her intention to discontinue caring for him, thus satisfying the definition contained in D.C.Code § 16–2301(9)(D). We,

therefore, hold that the trial court did not err.

*Affirmed.*

---

3. In her most recent incarceration, in Virginia, appellant failed even to contact the caretaker to inform her that she had been incarcerated, thus leaving the caretaker with nowhere to turn for assistance. She failed to provide any alternate care in the event that the caretaker found herself unable to care for the child any longer. This fact is aggravated by appellant's knowledge that her addiction placed her at risk of being incarcerated and potentially out of contact with the caretaker.

4. We do not hold that any chemically dependent parent is neglectful *per se.* Where a parent or parents are chemically dependent, the trial court must consider whether the parent otherwise cared for, or made arrangements for the care of, the minor child. A neglect finding would not result where a capable parent or guardian shares physical custody and responsibility for the child and there is no evidence of actual or imminent harm from the addicted parent. Such is not the case here.